UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWYONE LYNCH,<br><br>       Plaintiff,<br><br>    v.<br><br>A. KUSTER, et al.,<br><br>       Defendants. | Case No. 21-cv-09897-JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRISONER MEDIATION PROGRAM; STAYING CASE**<br><br>Re: Dkt. No. 18 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against officials at Salinas Valley State Prison ("SVSP"). The remaining claims are First Amendment retaliation claims against Defendants Martinez and Marquez, and Eighth Amendment endangerment claims against Defendants Kregg and Paulson.[1] These Defendants (hereinafter "Defendants" unless otherwise specified) filed a motion for summary judgment. Plaintiff opposed the motion, and Defendants replied. For the reasons discussed below, the motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are not in dispute, unless otherwise specified.

According to Plaintiff, on July 6, 2019, Defendant Martinez asked him to "snitch" on "dirty cops" in exchange for Martinez dropping disciplinary charges against Plaintiff for possession of a cell phone.[2] Plaintiff refused, and on July 8, 2019, filed an administrative

---

[1] The claims against Defendants Kuster and Mowery were dismissed without prejudice for improper joinder. (ECF No. 15.)

[2] Plaintiff alleges he had a parole hearing in 59 days and was using the phone to make parole plans.

grievance against Martinez and another non-defendant officer regarding this interaction. In his deposition, Plaintiff stated that he did not discuss this grievance with Martinez or give him a copy of it (ECF No. 18-4 at 5-6), but in his declaration, Plaintiff states it was "common custom and practice" for jail staff members to receive a copy of grievances against them (ECF No. 21-1 at ¶ 21).

Plaintiff states in his declaration on July 16, 2019, Martinez told other inmates that Plaintiff a sex offense conviction (ECF No. 21-1 at ¶ 8), and on July 19, 2019, Martinez showed other inmates a "legal status summary" form indicating Plaintiff was convicted of "Kidnap/Robbery/Rape/Oral Cop" (ECF Nos. 1 at 25; 21-1 at ¶ 9).[3] In his deposition, Plaintiff stated he could not name any inmates whom Martinez had told about Plaintiff's sex offenses. (ECF No. 18-4 at 5-7.) However, he submits with his opposition declarations by two inmates – Chambers and Woodard – stating that in July 2019, Martinez showed them and a third inmate a "Legal Status Summary" form stating Plaintiff was convicted of sex offenses, after which Chambers gave the form to Plaintiff. (ECF No. 21-2 at 20-24.) These two inmates also state Martinez was aware of the grievance Plaintiff had filed against him. (*Id.*) On August 10, 2019, Plaintiff filed another administrative grievance against Martinez for this conduct.

Martinez has not submitted a declaration other evidence indicating whether or not he received a copy of this grievance or was otherwise aware of it, or whether or not he informed other inmates that Plaintiff had a sex offense conviction.

On October 23, 2019, Defendant Marquez (and other non-defendant officials) intercepted a letter Plaintiff wrote to the Office of Internal Affairs ("OIA"). According to Plaintiff, the letter complained about the adjudication of his grievances against Martinez (ECF No. 21-1 at ¶¶ 12-13; 21-1 at 13-14). Marquez met with Plaintiff regarding this letter. Plaintiff states he answered all of Marquez's questions, and Marquez "pointed fingers in my face, yelled profanity, and stated to me; 'who the fuck you think you are boy, writing OIA, do you know where you're at? What the fuck you were thinking, someone from the OIA was coming to see you about that complaint you wrote?

---

[3] Notwithstanding the information on this form, Plaintiff states he was never convicted of rape or oral copulation. (ECF No. 21-1 ¶ 10.)

2

I read that shit you tried to mail out as legal mail, your ass is going to the hole (ASU), this will teach you not to be ratting out my staff, take that shit somewhere else, a Sensitive Needs Yard (SNY)!'" (ECF No. 21-1 at ¶ 14.) Marquez then moved Plaintiff to administrative segregation, and Plaintiff informed the Facility Captain that prison staff had placed him here in retaliation for his letter to the OIA. The next day, Plaintiff was returned to general population.

Marquez supplies a substantially different account. He states Plaintiff's letter asserted prison staff had threatened Plaintiff and were disseminating to the prison population information about his convictions. (ECF No. 18-3 at ¶ 3).[4] According to Marquez, when he met with Plaintiff, Plaintiff was defensive and refused to identify who was threatening his safety. (*Id.* at ¶ 5.) He therefore moved Plaintiff to administrative segregation out of concern for Plaintiff's safety, and he states Plaintiff was moved back to general population "apparently" because Plaintiff cooperated. (*Id.* at ¶ 7.)

On April 9, 2020, Paulson, a psychologist, met with Plaintiff. Plaintiff told her that his fellow "Crips" – a "Security Threat Group" ("STG") at his prison – did not want him to be housed with them due to Martinez's falsely identifying him as a sex offender. He also told her prison officials were trying to get him to live with rival STG members who would harm him. Plaintiff states in his declaration that he suffered from severe depression, anxiety and post-traumatic stress. (ECF No. 21-1 at ¶ 19.) He also states that Paulson and Kregg, another psychologist, refused to recommend him for single-cell status. (*Id.*)

Paulson and Kregg treated Plaintiff for his mental health problems during the relevant time period, as have a number or other mental health professionals. Under prison rules, Paulson and Kregg, as medical professionals, could not grant a request for single-cell status. (ECF No. 18-2 at ¶ 2.) They could recommend such a placement if it was necessary based upon "mental health factors;" such a recommendation would be reviewed by a team of officials from multiple disciplines and a final decision made by a senior prison official. (*Id.* at ¶ 3.) Kregg and Paulson and other prison counselors could not recommend single cell housing based upon Plaintiff's

---

[4] The parties have not produced a copy of this letter.

1  concern about his safety at the hands of other prisoners because those are "custody" issues, not
2  Plaintiff's mental health issues. (*Id.* at ¶¶ 4, 7, 8-12.) Kregg nevertheless informed officials of
3  Plaintiff's request to transfer to another prison, and Paulson recommended Plaintiff pursue his
4  safety concerns and desire for a single cell or a transfer with to officials with responsibility for
5  custody issues.[5] (*Id.* at ¶¶ 6, 8.)

**DISCUSSION**

I.  **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.* "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014). A court may not

---

[5] Other mental health professionals also relayed Plaintiff's interest in a transfer to custody officials.

4

1 disregard direct evidence on the ground that no reasonable jury would believe it. *Leslie v. Grupo*
2 *ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (where nonmoving party's direct evidence raises
3 genuine issues of fact but is called into question by other unsworn testimony, district court may
4 not grant summary judgment to moving party on ground that direct evidence is unbelievable).

**II.    Analysis**

1.    Retaliation Claim Against

Plaintiff claims Defendants retaliated against him because he engaged in conduct protected by the First Amendment.[6]

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). A prisoner may not be retaliated against for using such procedures. *Id.* at 567.

a.    Martinez

Plaintiff claims Martinez disseminated false information that Plaintiff was incarcerated for "Kidnapping/Robbery/Rape/Oral Cop" because Plaintiff filed two administrative grievances against Martinez. (ECF No. 1 at ¶ 16.)[7]  A prisoner may not be retaliated against for using established prison grievance procedures. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

Defendants argue there is no evidence Martinez knew about Plaintiff's administrative grievance. This factual issue is material to the causation element of Plaintiff's retaliation claim because if Martinez did not know about Plaintiff's administrative grievance, then it could not have

---

[6] In its screening order, the Court noted Plaintiff claims retaliation by Defendants Marquez and Martinez (and the dismissed Defendants). (ECF No. 6.)  Plaintiff also claims Kregg and Paulson retaliated against him. (ECF No. 1 at 9:27-10:1, 10:21-23, 18:17-18.) As discussed below, however, he does not allege or show any facts indicating they took adverse actions against him for his protected conduct.

[7] The complaint also claims Martinez retaliated against Plaintiff because Plaintiff refused to "snitch" for Martinez. (ECF No. 1 at 8:16-17, ¶ 16.)  Defendants do not address this aspect of the retaliation claim in their motion.

5

caused him to take the adverse action of disseminating information that Plaintiff had a sex offense conviction. In support of their argument, Defendants point to the fact that Plaintiff testified in his deposition that he did not discuss his grievance with Martinez or give him a copy of it. This does not preclude Martinez from having learned about the grievance through other channels, however. In his declaration, Plaintiff states it was "common custom and practice" for prison staff members to receive a copy of grievances against them. (ECF No. 21-1 at ¶ 21.)[8] Defendants have not presented evidence to the contrary. A fact-finder could reasonably draw this inference that prison officials would be informed of complaints levied against them insofar as this would enable officials to investigate, address, and, if appropriate, remedy such complaints properly. In addition, Martinez has not submitted a declaration or other evidence indicating he did not in this instance receive or learn about Plaintiff's grievances against him. Therefore, the Court concludes there is a triable issue as to whether Martinez knew about Plaintiff's administrative grievance.

Defendants also argue there is no triable issue as to whether there Martinez actually disseminated information to other inmates that Plaintiff was a sex offender. Plaintiff states in his declaration that on July 16, 2019, Martinez told other inmates that Plaintiff had a sex offense conviction and that on July 19, 2019, Martinez showed inmates a form indicating such a conviction. Defendants argue there is no evidence upon which a fact-finder could draw these inferences because in his deposition Plaintiff did not describe how he knew Martinez had disseminated the information nor did Plaintiff identify anyone with whom Martinez had shared the information. However, the declarations by two inmates submitted with Plaintiff's opposition state Martinez showed them a form indicating that Plaintiff was convicted of sex offenses, and then inmate Chambers gave the form to Plaintiff. (ECF No. 21-2 at 20-24.) As noted, Martinez does not supply a declaration or any other evidence that he did not do so. Defendants argue that these declarations are not sufficient to create a triable factual question because the "Legal Status Summary" form, which Martinez is alleged to have shared with inmates in July 2019, was not

---

[8] The two inmate declarants – Chambers and Woodard – also state Martinez was aware of the grievance, but the Court does not rely on this evidence for the present analysis because it is not clear how they know Martinez's state of mind, i.e. whether through inadmissible hearsay or through witnessing him with a copy of the grievance.

printed until September 2022, over three years later. (ECF No. 1 at 25.) This argument is unpersuasive. While the copy of the legal status summary form attached to the complaint appears to have been printed in September 2022, it is perfectly reasonable to infer other copies of this form existed in July 2019, that Martinez could have had access to such copies, and that he could have shared them with other inmates at that time. There is no evidence as to when Plaintiff obtained the copy of this document attached to his complaint,[9] or that there were no other copies Martinez could have shown to other inmates in July 2019. Consequently, there is a triable factual question as to whether Martinez took the adverse action of disseminating information to other inmates that Plaintiff had a sex offense.

Defendants do not otherwise argue that there are no triable issues of fact relating to the elements of Plaintiff's retaliation claim that Martinez took the adverse action of informing other inmates that Plaintiff had a sex offense because Plaintiff had filed an administrative grievance, and that this action had a chilling effect and served no legitimate penological purpose.

Accordingly, Martinez is not entitled to summary judgment on this retaliation claim.

      b.    <u>Marquez</u>

Plaintiff claims Marquez placed him in administrative segregation in retaliation for his administrative grievances against Martinez (ECF No. 1 at 13 ¶ 20) and his letter to the Office of Internal Affairs ("OIA") complaining about the adjudication of his administrative grievances (*id.* at 9 ¶ 7). Marquez's argument for summary judgment on this claim is based solely upon his version of events, however, i.e. that Plaintiff raised safety concerns in his letter to the OIA, that Marquez placed him in administrative segregation only to protect Plaintiff, and that Plaintiff was release from segregation when Plaintiff cooperated with prison officials. As described above, Plaintiff disputes this account in the following material respects in his sworn declaration: the OIA letter did not raise safety concerns but complained about the adjudication of his grievances; Marquez angrily confronted him about writing to the OIA and told him that he was going to the

---

[9] Plaintiff did not indicate in his deposition when he got the copy of the form that is attached to the complaint. (*See* ECF No. 18-4 at 9:17-20 ("I don't know").) He indicated he had received a copy of it from other inmates in

"hole" to "teach" him not to "rat[] out" staff; and staff released him from segregation because he informed a supervisor of Marquez's retaliatory conduct, not because his safety concerns had abated. Plaintiff's version of events, which the Court must accept as true at this stage, supports the reasonable inference that Marquez took the adverse action of placing him in segregation because of his protected conduct of writing a letter and filing grievances. If true, moreover, this account supports the reasonable inference that Marquez's conduct had a reasonable chilling effect and served no legitimate penological purpose. Accordingly, Marquez is not entitled to summary judgment on Plaintiff's retaliation claim.

    c. <u>Kregg and Paulson</u>

Plaintiff claims that Kregg and Paulson denied him single cell status in retaliation for his protected conduct (ECF No. 1 at 9-10 ¶¶ 8, 9), but he does not allege what that protected conduct was. The evidence presented also does not show these Defendants knew about any protected conduct by Plaintiff, nor, for the reasons discussed below, is there any evidence they had the power to grant him single-cell status. For these reasons, Defendants Paulson and Kregg are entitled to summary judgment on Plaintiff's retaliation claim.

  2. <u>Eighth Amendment Claims</u>

Plaintiff claims Defendants Martinez, Marquez, Kregg, and Paulson endangered his safety in violation of his Eighth Amendment rights. (ECF No. 1 at 19 ("Count 2").) The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

    a. <u>Martinez</u>

8

Plaintiff claims Martinez endangered him by releasing false information to other inmates in Plaintiff's housing unit that Plaintiff was a sex offender. (ECF No. 1 at 8 ¶ 5; 19 "Count 2" & ¶ 48.) In the screening order, the Court found Plaintiff stated a cognizable Eighth Amendment claim against Martinez. (ECF No. 6 at 2:18.) Defendants do not address the Eighth Amendment claim against Martinez in their summary judgment motion. (ECF No. 18 at 14-17 (addressing retaliation claim against Martinez and Marquez); 17-18 (addressing Eighth Amendment claim only against Defendants Kregg and Paulson).) Moreover, for the reasons discussed above, there is a triable issue as to whether Martinez disseminated information to other inmates that Plaintiff had a sex offense. If this fact is true, as the Court is required to assume at this stage, it supports a reasonable inference that Martinez created an excessive risk of harm to Plaintiff at the hands of other prisoners, and that Martinez was deliberately indifferent to this risk. Accordingly, even if Martinez had moved for summary judgment on this claim, the record does not support granting it.

### b. Marquez

Although Plaintiff includes Marquez in his Eighth Amendment claim (ECF No. 1 at 19 ("County 2") and ¶ 48), he does not allege in the complaint any facts that Marquez disseminated information that Plaintiff was a sex offender, that Marquez was involved in denying Plaintiff single-cell status, or that Marquez otherwise engaged in any conduct that endangered Plaintiff. (*See*, *e.g.*, *id.* at ¶ 7.) Nor is there any evidence of such conduct in the record. Consequently, Marquez is entitled to summary judgment on Plaintiff's Eighth Amendment Claim.

### c. Kregg and Paulson

Plaintiff claims Kregg and Paulson refused to allow him a single-cell, which endangered him because of Martinez's dissemination of false information that Plaintiff was a sex offender. The evidence is uncontradicted that Kregg and Paulson did not have the authority or power to grant Plaintiff a single cell, however. While they had the authority to *recommend* a single cell, their authority was even limited in this regard; they were limited in making such recommendations to instances in which it a single cell was needed to address "mental health, developmental or cognitive impairment, or medical concerns." *See* 15 Cal. Code Regs. § 3269(g). The evidence is uncontradicted that the issue of Plaintiff risking harm if he had to share a cell is a "custody" issue

handled by other prison officials, not a mental health issue within the purview of mental health counselors like Kregg and Paulson. Plaintiff asserts he suffered from anxiety and depression, and the evidence is uncontradicted that Kregg and Paulson and a number of other mental health professionals provided extensive counseling and treatment for these problems. There is no evidence, however, that a single-cell was medically necessary to treat these conditions. To the contrary, none of the mental health professionals who examined Plaintiff determined that Plaintiff's mental health issues warranted either a single cell or transfer to another prison. Plaintiff's disagreement with these medical opinions does not create a triable factual question. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."). The evidence shows, moreover, that Kregg and Paulson did not sit idly by when Plaintiff told them of his safety concerns. In addition to treating Plaintiff's mental health issues, Kregg relayed to custody officials Plaintiff's request for a transfer to another prison, and Paulson explained to Plaintiff how to pursue his request for a single cell through the appropriate channels.

Under these circumstances, no reasonable inference can be drawn from the evidence presented that Kregg or Paulson were deliberately indifferent to Plaintiff's safety or mental health needs. Consequently, they are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

3. Punitive Damages

Defendants Martinez and Marquez argue they are entitled to summary judgment on Plaintiff's claim for punitive damages.[10] Punitive damages may be awarded in a § 1983 suit "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983), Defendants make a cursory argument without elaboration that Plaintiff "lacks evidence" showing Defendants acted with evil intent or motive or a reckless or callous

---

[10] Kregg and Paulson participate in this argument as well, but because summary judgment is granted to these Defendants on other grounds, their punitive damages argument need not be reached.

1   indifference to Plaintiff's rights. The evidence that Martinez informed other inmates that Plaintiff
2   had a sex offense, and the evidence that Marquez put him in segregation to punish him for writing
3   to the OIA and grieving Martinez's actions, supports a reasonable inference that they acted with
4   reckless or callous disregard to Plaintiff's rights. Martinez and Marquez are not entitled to
5   summary judgment on Plaintiff's claim for punitive damages is denied.

        4.        Qualified Immunity

Defendants Martinez and Marquez also argue they are entitled to qualified immunity. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). No reasonable official could have believed it was lawful to intentionally inform other inmates that Plaintiff had a sex offense or to put him in segregation to punish him for writing to the OIA, which is what the evidence, when viewed in a light most favorable to Plaintiff as the Court must do at this stage, shows. Therefore, Martinez and Marquez are not entitled to summary judgment on the grounds of qualified immunity.[11]

**CONCLUSION**

Defendants' summary judgment motion is GRANTED IN PART AND DENIED IN PART. Defendants Kregg and Paulson are granted summary judgment in full. Summary judgment is also granted to Marquez on Plaintiff's Eighth Amendment endangerment claim. Summary judgment is denied on Plaintiff's retaliation claim against Marquez and denied on Plaintiff's retaliation and Eighth Amendment claims against Martinez.

This case is REFRERRED to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation Program. The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Illman shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the

---

[11] The Court does not reach the qualified immunity argument by Kregg and Paulson because summary judgment is granted to them on other grounds.

11

conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement. All further proceedings in this case except those related to the mediation proceedings, as ordered or permitted by Magistrate Judge Illman, are STAYED pending completion of the mediation proceedings.

The clerk shall send a copy of this order to Magistrate Judge Illman.

This order resolves docket number 18.

**IT IS SO ORDERED.**

Dated: February 26, 2024

JEFFREY S. WHITE
United States District Judge